*Duncan v. Jordan,*
**Appeal No. 26-11705-Q**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Pursuant to Circuit Rules 26-1.1 and 26.1-2, the following is a list of the trial judges, attorneys, persons, associations of person, firms, partnerships, or corporations known to the undersigned that have an interest in the outcome of this particular case:

1. Barnes, Roy E., The Barnes Law Group, LLC, counsel for plaintiffs-appellees.

2. Boring, Charles P., Robbins Alloy Belinfante Littlefield LLC, counsel for defendants-appellants.

3. Buckwald, Jordan, Perkins Coie LLP, counsel for defendants-appellants.

4. Cabou, Jean-Jacques, Perkins Coie LLP, counsel for defendants-appellants.

5. Casselman, Margo, Perkins Coie LLP, counsel for defendants-appellants.

6. Coursey, James Jr., defendant in the underlying case in his official capacity as Member of Georgia's Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission.

C-1 of 3

7.    Darrisaw, Victoria S., defendant in the underlying case in her official capacity as Member of Georgia's Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission.

8.    Huston, Michael R., Perkins Coie LLP, counsel for defendants-appellants.

9.    Jordan, Jennifer Auer, plaintiff in the underlying case and candidate for a 2026 vacancy on the Supreme Court of Georgia.

10.    Rankin, Shamiracle J., plaintiff in the underlying case and candidate for a 2026 vacancy on the Supreme Court of Georgia.

11.    Ravry, Jane Ashley, Robbins Alloy Belinfante Littlefield LLC, counsel for defendants-appellants.

12.    Selby, Warren, defendant in the underlying case in his official capacity as Member of Georgia's Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission.

13.    Sells, Bryan L., The Law Office of Bryan L. Sells, LLC, counsel for plaintiffs-appellees.

14.    Tate, III, S. Lester, Akin & Tate, PC, counsel for plaintiffs-appellees.

C-2 of 3

15.   Wilson, W. Mathew, Bell Wilson Law, LLC, counsel for plaintiffs-appellees.

16.   Worsham, Karl J., Perkins Coie LLP, counsel for defendants-appellants.

Counsel for Appellants certify that Appellants are individuals, sued in their official capacities as representatives of State government entities. Counsel for Appellants further certify that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Defendant-Appellants will file a revised certificate of interested persons should they become aware of a change in corporate ownership interests that would affect the disclosures required by Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-4.

Dated:  May 15, 2026

 *s/ Michael R. Huston*
Michael R. Huston
PERKINS COIE LLP

C-3 of 3

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

| | |
|---|---|
| VICTORIA S. DARRISAW, JAMES COURSEY, JR., and WARREN SELBY, in their official capacities as members of the Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission,<br><br>Defendants-Appellants,<br><br>v.<br><br>JENNIFER AUER JORDAN, and SHAMIRACLE J. RANKIN,<br><br>Plaintiffs-Appellees. | Case No. 26-11705-Q |

## MOTION TO STAY TEMPORARY RESTRAINING ORDER PENDING APPEAL

1

Under Federal Rule of Appellate Procedure 8, Appellants the Honorable Victoria S. Darrisaw, James S. Coursey, Jr., and Warren Selby, in their official capacities as members of the Special Committee on Judicial Election Campaign Intervention of the Judicial Qualifications Commission (collectively, the "Commission" or the "State"), respectfully move for this Court to stay the Temporary Restraining Order ("TRO") issued by the U.S. District Court for the Middle District of Georgia **today, May 15, 2026**, pending appeal. *See* Appendix in Support of Motions to Stay and Expedite ("APP.") 311-313 (ECF No. 48). As set forth in the Commission's Emergency Motion to Expedite, filed concurrently, the Commission respectfully requests emergency consideration of this Motion, given that this appeal relates to an election that concludes on **May 19, 2026**. The Commission will promptly notify Appellees of this Motion and serve it on all parties appearing below.

## INTRODUCTION

This case is about the State of Georgia's sovereign interest in an independent judiciary. This emergency motion is about stopping a district court's unjustified intrusion into an ongoing election for the Georgia Supreme Court that will be completed in four days (on May 19, 2026).

2

Appellants are sitting members of the Georgia Judicial Qualifications Commission. They are charged by the Georgia Constitution with enforcing Georgia's Judicial Code of Conduct. Those constitutional responsibilities include, where warranted, informing the public of potential misconduct occurring during campaigns for judicial office. Yet the district court's order enjoined the Commission from performing that function during the critical final days of a statewide judicial election, in contravention of bedrock principles of federalism among multiple other errors. The court gave almost no reasoning for its extraordinary, federalism-offending order, which directly conflicts with another order of a district judge within this Circuit in a case with very similar facts. Worse yet, the district court granted Plaintiffs' motion to seal the proceedings and thereby prevented the public from even learning about this lawsuit, over the objection of Appellants and Georgia's preeminent newspaper. A stay is warranted—and urgently needed—so that Plaintiffs do not succeed in securing an unfair electoral advantage and depriving Georgia's voters of relevant information as they cast their ballots.

An enjoined party can appeal from a TRO if the "District Court's order carries many of the hallmarks of a preliminary injunction," the

3

"basis for issuing the order is strongly challenged," and the appealing party is "likely to succeed in showing the District Court lacked jurisdiction." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025). Such appellate review is essential to ensure that a district court does not "shield its orders from appellate review" and giving them "virtually unlimited authority over the parties in an injunctive proceeding." *Sampson v. Murray*, 415 U.S. 61, 86-87 (1974).

This is a textbook case of such shielding. The district court enjoined the Committee from proceeding through the normal course of its process, and issuing a public statement informing Georgia voters of potential ethical misconduct in judicial campaigns for Georgia's Supreme Court, *until after the election is over*. The eight-day TRO will expire four days after the election, thus foreclosing all properly informed voting. There is nothing temporary about this TRO; if left unreviewed it will likely be the first, last, and only judicial consideration of this critically important issue. And the Commission is likely to succeed in showing that the district court lacked jurisdiction to enter this injunction at least three times over—per the doctrines of *Younger* abstention, standing, and ripeness. The

4

Commission is also likely to succeed in showing that the district court erred in its analysis and application of the First Amendment.

A stay will work no substantial injury on Plaintiffs, because the TRO never should have issued in the first place. And a stay is strongly in the public interest because, among other reasons, it critical to a fair and constitutionally proper election for Georgia's highest court.

The Commission requested a stay from the district court, *see* APP.307, but the district court's order does not grant such relief and provides no reasoning, APP.311-313; *see* Fed. R. App. P. 8(a)(2)(A)(ii).

## BACKGROUND

**I.   Georgia established a specialized disciplinary process for judicial candidates.**

The Georgia Constitution empowers the Judicial Qualifications Commission to investigate and prosecute alleged violations of Georgia's Code of Judicial Conduct. During election years, the Rules of the Commission, which are promulgated by the Georgia Supreme Court, further empower the Commission's Special Committee on Judicial Election Campaign Intervention to "deal expeditiously with allegations of ethical misconduct in campaigns for judicial office." Rules of the Judicial Qualifications Commission of Georgia ("Comm'n R.") 29(A). One of the

5

Committee's principal election-period functions is to address alleged judicial campaign misconduct and, when warranted, to issue public statements intended to inform voters about ethical misconduct *before* they cast their ballots. Indeed, the "Committee's entire reason for existence is to deal expeditiously with allegations of ethical misconduct in campaigns for judicial office so that voters can be informed before they vote." Veal Decl. ¶ 13.

Georgia's judicial ethics framework applies to candidates for judicial office and includes rules limiting endorsements of other candidates; pre-commitments or promises concerning legal issues likely to come before the courts; and false or misleading campaign statements. Those rules reflect Georgia's compelling interest in preserving both the reality and appearance of judicial neutrality during elections for judicial office.

## II.    The Commission opened a pre-election investigation.

Plaintiffs-Appellees Jennifer Jordan and ShaMiracle Rankin are candidates for the Georgia Supreme Court in the May 19, 2026, statewide election. During the campaign, Jordan and Rankin appeared at a campaign event to convey their commitment to "RESTORE ABORTION RIGHTS." *E.g.*, APP.94. And both candidates widely publicized, on their

campaign social media profiles, endorsements from pro-abortion organi-zations like Reproductive Freedom for All, *e.g.*, APP.94, 97, and EMILY's List, *e.g.*, APP.95, 97. Jordan and Rankin also released a joint campaign commercial—notwithstanding Georgia law's prohibition on judges or ju-dicial candidates giving endorsements—where they represented that the both had "taken on big corporations and insurance companies that profit off your pain" and "taken down child predators and domestic abusers that threaten your safety," and promised that "we'll fight for you." APP.94.

After receiving complaints, the Special Committee issued confiden-tial notices on April 27, 2026, advising Appellees that the allegations warranted further investigation under Georgia's judicial ethics rules. APP.99-126. The notices imposed no sanctions, prohibited no speech, and initiated no formal charges. Rather, the notices requested responses from Plaintiffs to determine if there may be a violation.

## III.    Plaintiffs filed suit to enjoin the Special Committee's inves-tigation.

Rather than respond through the ordinary Commission process, Plaintiffs filed this federal action on April 30, 2026, seeking to enjoin the ongoing Commission proceeding and halt enforcement of portions of Georgia's judicial ethics rules against them before the election.

The Commission opposed emergency relief on multiple grounds, including on the threshold issue of *Younger* abstention. The Commission argued that its proceeding constitutes a classic state enforcement proceeding implicating exceptionally important sovereign interests concerning regulation of the judiciary and judicial elections.

## IV.    The district court granted Plaintiff's TRO.

**Earlier today, May 15, 2026,** the district court entered a TRO restraining defendants-appellants from performing one of the core election-year functions of the Commission. The TRO—issued four days after the TRO hearing—contains very little reasoning. Its entire merits analysis was set out in a single sentence: "Plaintiffs have established Defendants challenged conduct likely violates the Plaintiffs' First and Fourteenth Amendment rights." (The district court stated that a more fulsome explanation will follow later, though by then it will likely be too late to stop the order from preventing the Commission from fulfilling its duty to inform Georgia's voters before the election.) On that conclusory basis, the court stopped the Commission in its tracks. Specifically, it enjoined the Commission "from issuing a non-confidential Public Statement on the April 27, 2026 notice letter or the alleged violations" for "eight (8) days

8

from the date of issuance." APP.312. **Eight days from today will be 4 days after the election.**

Appellants immediately filed a notice of appeal, as well as this Motion, and other papers, in furtherance of emergency consideration before the May 19, 2026, election.

## ARGUMENT

This Court should grant a stay of the TRO pending appeal.

In determining whether to issue a stay pending appeal, the Court considers whether: (1) the moving party is likely to succeed on the merits; (2) the moving party will be irreparably injured absent a stay; (3) a stay will not substantially injure the other parties interested in the proceeding; and (4) the public interest favors a stay. *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434. Each of these factors favors granting a stay here.

### I. The Commission is likely to succeed on the merits of this appeal.

To obtain a stay, the Commission need only make a "strong showing" that it is likely to succeed on the merits of the appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). That standard is easily met here. The district

court enjoined a confidential, preliminary investigation by a state ethics body before any charges were filed, any discipline imposed, or any speech restricted. In doing so, the court committed legal error and abused its discretion in four independent respects: it disregarded *Younger* abstention; it found Article III standing where Plaintiffs' speech remains entirely uncensored; it adjudicated unripe claims; and it misapplied controlling First Amendment precedent. Any one of these errors warrants a stay; together, they make reversal a near certainty.

## A.    *Younger* abstention bars this suit.

To start, Appellants are likely to prevail on the merits of their appeal because, by enjoining a state constitutional enforcement process entrusted to state actors under state law, the district court violated the *Younger* abstention doctrine and its long-standing national policy preventing federal courts from interfering in state proceedings in areas of unique state interest. *See Younger v. Harris*, 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts."); *see also Ohio Civ. Rts. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986).

10

("[F]ederal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court."). As the Court recognized in *Younger*, "the normal thing to do" when federal courts are asked to enjoin pending state proceedings "is not to issue such injunctions." *Younger*, 401 U.S. at 45.

The United States Supreme Court has also specifically addressed the *Younger* doctrine in the context of state disciplinary proceedings, saying that "[t]he importance of the state interest in the pending state judicial proceedings and in the federal case calls *Younger* abstention into play." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432 (1982). The now-well-known *Middlesex* test evaluates application of abstention through three factors, all of which are present here: (1) is there a pending state proceeding, (2) does it implicate the important state interests; and, (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Id.*

First, there is a pending state proceeding. All stages of a judicial discipline proceeding, like the Commission's here, are "pending" proceedings under *Younger* because the judicial discipline process is "'a

continuum from start to finish,' which at any point precludes the 'right to detour into federal court.'" *Parker v. Jud. Inquiry Comm'n of the State of Alabama*, 212 F. Supp. 3d 1171, 1181-82 (M.D. Ala. 2016) (quoting *Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 35 (1st Cir. 2004)).

This makes good sense. The Commission's investigation process exists to afford candidates the opportunity to provide confidential, informal responses to allegations without the need to publicize potentially unfounded complaints against them. And each step of its process, including its investigatory process, is *required* by rule. *See* Comm'r Rs. 17-25, 29. Unless all parts of the Commission's process are part of the "ongoing proceeding" under *Younger,* the Special Committee could not properly investigate any allegations (as it must under the Code) without simultaneously giving candidates in those proceedings a bizarre option to entirely ignore the Special Committee's request (as Rankin and Jordan did here) and instead seek federal court interference that entirely circumvents the State legislature's intricate process for judicial elections.

As to the second *Middlesex* factor, it undisputed that Georgia has a compelling state interest in ensuring the integrity of its judicial elections. APP.46.

12

And as to the final factor, the Commission's process, in which the investigated candidates are asked to raise any concerns (including constitutional concerns) in their initial response to the investigation notice and is ultimately overseen by Georgia Supreme Court review, is a plainly adequate forum to present any First Amendment arguments the Candidates have. *Moore v. Sims*, 442 U.S. 415, 426 (1979) (holding that a federal suit is improper unless state law "clearly bars the imposition of" First Amendment claims in the state forum). There is no indication that Georgia's law contains any such bar. Under Georgia's framework: the Commission Investigative Panel investigates complaints; a Hearing Panel conducts hearings and may recommend discipline; and the Georgia Supreme Court reviews recommended sanctions and enters the final disciplinary disposition. *See* O.C.G.A. § 15-1-21; Comm'n R. 24(D). There is zero indication that First Amendment challenges could not be raised in the Commission's process.[1]

---

[1] Even if this Court were not entirely sure on that score, it has previously acknowledged that "in the interest of comity and federalism" it "err[s]— if [it] err[s] at all—on the side of abstaining." *Butler v. Alabama Jud. Inquiry Comm'n,* 261 F.3d 1154, 1159 (11th Cir. 2001) (vacating district court's grant of preliminary injunction based on *Younger* abstention even

Finally, Plaintiffs have not argued that any narrow exception to *Younger* applies here. *See Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 911 (11th Cir. 2023). The district court's refusal to abstain was reversible error and alone demonstrates the Commission is likely to succeed on appeal.

### B.    Plaintiffs lack Article III standing.

Even in First Amendment cases, the "injury-in-fact requirement … cannot be ignored." *Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001); *see Harrell v. Fla. Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010). Plaintiffs cannot meet that requirement on this record.

The Special Committee's notices did one thing: request a confidential written response. They did not order any speech removed, nor restrict any speech going forward. APP.94, 99-126. And the materials identified in those notices—the joint commercial, the joint event appearances, and the shared endorsements—*remain publicly posted to this day* on

---

with uncertainty as to the adequacy of state forum to raise a First Amendment challenge to judicial ethics canons).

14

Plaintiffs' social media and campaign websites. APP.94-98. Speech that has not been chilled cannot supply an injury in fact.[2]

Plaintiffs submitted no admissible evidence with their motion. Their verified complaint averred only that its contents were "true and correct to the best of my knowledge, information, and belief"—a formulation that does not satisfy 28 U.S.C. § 1746. *See Chirinos v. ICE*, 2026 WL 327639, at *8 (M.D. Fla. Feb. 8, 2026). The conclusory self-censorship claims in their late-filed reply declarations—that they now use "women's healthcare" in place of "reproductive healthcare," or avoid topics wholly unrelated to the notices—are not chilled speech traceable to the challenged rules.

The court below should have followed *Barrow*, which rejected standing on materially indistinguishable facts. 2024 WL 2216834, at *4. It also overlooked that the most the Special Committee can ever do on its own is make a public statement—and "official criticism" is not an actionable

---

[2] To the extent Plaintiffs claim that the issuance of a public statement by the Commission would somehow violate their First Amendment rights, it is axiomatic that "the Government's own speech ... is exempt from First Amendment scrutiny." *McGriff v. City of Miami Beach*, 84 F.4th 1330, 1333 (11th Cir. 2023) (cleaned up). And Plaintiffs' complaint raises *only* a First Amendment claim.

injury to speech. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478–79 (2022). A state administrative body "violates no constitutional rights by merely investigating." *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986).

### C.    Plaintiffs' claims are not ripe.

Plaintiffs themselves conceded that the Special Committee's investigation "may or may not ripen into a civil enforcement proceeding." APP.36. That concession is dispositive under *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998), which asks (1) whether further factual development would aid review, (2) whether judicial intervention would interfere with administrative action, and (3) whether delay would cause hardship.

Each factor cuts decisively against the injunction at this preliminary stage. The Commission *has not yet applied* any rule to any speech; it would be "speculative to assume" how it ultimately will. *Harrell*, 608 F.3d at 1263; *Pittman*, 267 F.3d at 1278–79. Federal intervention in mid-investigation directly interferes with that ongoing decision-making. *Pittman*, 267 F.3d at 1278. And there is no hardship from waiting:

16

nothing has been censored, no discipline has been imposed, and no charge has been filed. *Id.* at 1280–81.

The only action the Commission is committed to taking (and the only action the district court has enjoined) is issuing a public statement about the preliminary findings of the Special Committees' investigations. But, again, the Commission's "own speech … is exempt from First Amendment scrutiny." *McGriff v. City of Miami Beach*, 84 F.4th 1330, 1333 (11th Cir. 2023) (cleaned up). Plaintiffs cannot be constitutionally harmed by the Special Committee's public statement, nor can it be the basis for a constitutional challenge.

### D. Plaintiffs cannot show likelihood of success on their First Amendment claims.

Even setting aside justiciability, Plaintiffs failed to meet their burden to show any likelihood—let alone the required *strong* likelihood—of success on the merits of any claim. The challenged provisions of Georgia's Code of Judicial Conduct are constitutional, and on the record here the Special Committee at least had reasonable cause to investigate whether each had been violated.

It is inconceivable that any judge on this Court would do what Plaintiffs did here: give speeches promising to "restore abortion rights"

17

and "take on big corporations," and lending their own credibility to other candidates for office. Plaintiffs' opponents in this election—who are sitting Justices of the Georgia Supreme Court—could not give a speech like that consistent with their ethical responsibilities. Nor could they give endorsements of each other. The First Amendment does not make it *unconstitutional* for Georgia to require its candidates for judicial office to adhere to the same standards. By tying down the Commission's work through a secret order, the district court's injunction has handed Plaintiffs an unfair advantage in the ongoing election, and also undermined Georgia's sovereign ability to protect public confidence in the independence of its judiciary.

### 1.  Rule 4.1(A)(2) (Endorsement Clause).

Rule 4.1(A)(2) provides that judicial candidates "shall not publicly endorse another candidate for public office." Every court of appeals to consider materially similar provisions has upheld them. *Wolfson v. Concannon*, 811 F.3d 1176 (9th Cir. 2016) (en banc); *Winter v. Wolnitzek*, 834 F.3d 681, 691 (6th Cir. 2016); *Siefert v. Alexander*, 608 F.3d 974 (7th Cir. 2010). Plaintiffs' joint campaign commercial and joint appearances, in which they expressly aligned themselves with one another in pursuit

18

of two seats on the same court, are at minimum a colorable basis for the Commission to *investigate* whether each candidate publicly endorsed the other in contravention of Georgia law.

## 2. Rule 4.2(A)(2) (Commitments Clause).

Rule 4.2(A)(2) bars "statements or promises that commit the candidate with respect to issues likely to come before the court that are inconsistent with the impartial performance of the adjudicative duties of judicial office." That is *not* the "announce clause" struck down in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002). *White* expressly distinguished mere announcements of views from "pledges, promises, [and] commitments," and every circuit to consider properly drafted commitments clauses since *White* has upheld them. *Bauer v. Shepard*, 620 F.3d 704, 715 (7th Cir. 2010); *Winter*, 834 F.3d at 694. Plaintiffs' promise to "RESTORE ABORTION RIGHTS," coupled with their representations that they have "taken on big corporations" and will "fight for you," plausibly cross the line from issue advocacy into impermissible commitment on issues virtually certain to come before the Georgia Supreme Court. At the very least, the First Amendment does not disqualify the Commission

19

from merely *investigating* whether Plaintiffs' statements went beyond the boundaries of acceptable campaign messaging.

### 3. Rule 4.2(A)(3) (False or Misleading Statements).

Rule 4.2(A)(3) incorporates the constitutional actual-malice standard and is not facially unconstitutional. *Weaver v. Bonner*, 309 F.3d 1312, 1319, 1321, 1325 (11th Cir. 2002). The district court's injunction was, at a minimum, premature: the Commission was only *investigating* whether Plaintiffs' statements regarding their qualifications and the effect of their election were false or misleading. It had not charged them, adjudicated anything, or imposed any discipline. Enjoining a state body from even asking the question is not narrow tailoring—it is preemption of the state's constitutional role.

In short, this case is non-justiciable three times over—under *Younger*, standing, and ripeness—and even on the merits, Plaintiffs' claims fail. The Commission has made far more than the "strong showing" of success on appeal that *Nken* requires.

## II.    The State will suffer irreparable harm absent a stay.

"[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbot v. Perez*, 585 U.S. 579, 602 (2018); *see also Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2581 (2025) ("[A]ny time a

20

State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)).

Absent a stay of the preliminary injunction, Georgia will be left unable to enforce elements of its Judicial Ethics Canons governing the conduct of candidates for judicial office until this appeal is resolved on the merits—rules that were legitimately "enacted by representatives of its people" and that are substantially likely to be upheld as constitutional. *King*, 567 U.S. at 1302–03. By then, it will surely be too late. Georgia thus has a weighty interest in investigating alleged violations of its Judicial Code. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444-46 (2015). And immediate intervention is needed to prevent this irreparable harm; once the election concludes on May 19, 2026, it is too late.

## III.    Appellees will not be harmed by a Stay.

By contrast, appellees will suffer no injury from a stay. As discussed above, they lack standing and have not suffered any cognizable or constitutional harm based on their own Complaint. This is dispositive on the irreparable harm inquiry. Plaintiffs have "not shown irreparable harm largely because [they] ha[ve] not demonstrated a strong likelihood of

success on the merits." *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 455 (6th Cir. 2014). Because the "extraordinary and drastic" remedy of preliminary injunctive relief should never have been granted, there is no harm to appellees in vacating, let alone staying it. *Coshap, LLC v. Alpha, Inc.*, No. 23-cv-917, 2023 WL 4401468, at *4 (N.D. Ga. May 1, 2023) (cleaned up); *see also Platt*, 769 F.3d at 453 (rejecting plaintiff's request to "preliminarily enjoin provisions of the Ohio Code of Judicial Conduct until a full hearing on the merits could occur," because a contrary conclusion would "disrupt the state-law status quo before each side has had full opportunity to make its case"). The balance of the equities here clearly favors appellants. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1457 (11th Cir. 1986) (concluding balance of equities favored government where any injury to the plaintiffs would "only arise" if the plaintiffs were likely correct on the merits).

## IV.   The public interest favors entering a stay.

The public interest favors staying the injunction. Judicial "codes of conduct serve to maintain the integrity of the judiciary and the rule of law," and these codes are "the principal safeguard against judicial campaign abuses that threaten to imperil public confidence in the fairness

22

and integrity of the nation's elected judges." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009) (internal quotation marks omitted). Appellees' theory that halting the Commission's investigation promotes an informed electorate by ensuring voters receive "more information" fails twice over. First, the public has no legitimate interest in campaign speech obtained or disseminated in potential violation of the judicial canons designed to preserve judicial impartiality and public confidence in the courts. *Caperton*, 556 U.S. at 889. Second, rather than increase information available to the voters, upholding the stay delays or suppresses information by preventing a public statement about the investigation before the election. And that harm to Georgia's electorate is made all the worse by the district court's unjustified sealing order, which has precluded the Atlanta Journal Constitution from even reporting on Plaintiffs' lawsuit.

Voters have a substantial interest not only in hearing from judicial candidates, but also in knowing whether those candidates may have engaged in conduct warranting scrutiny by the body charged with protecting the integrity of Georgia's judiciary. By shutting down that process in the days before the election, the injunction disserves the public interest.

23

# CONCLUSION

For the reasons above, this Court should immediately stay the district court's temporary restraining order pending appeal.

Dated:  May 15, 2026

Respectfully submitted,

*s/ Michael R. Huston*

Michael R. Huston
Jean-Jacques Cabou
Karl J. Worsham
Margo R. Casselman (*admission pending*)
Jordan Buckwald (*admission pending*)
PERKINS COIE LLP
2525 East Camelback Road,
Suite 500
Phoenix, Arizona 85012
(202) 654-6200
MHuston@perkinscoie.com

*Attorneys for Defendants-Appellants*

24

# CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the requirements of Fed. R. App. P. 27(d)(2)(A) because it contains 4,269 words according to the count of Microsoft Word, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

I further certify that this motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion was prepared in Microsoft Word with the proportionally-spaced typeface of Century Schoolbook 14-point.

Dated:  May 15, 2026

 s/ Michael R. Huston
Michael R. Huston
PERKINS COIE LLP

1

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the fore-going with the Clerk of the Court for the United States Court of Appeals by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  May 15, 2026

*s/ Michael R. Huston*
Michael R. Huston
PERKINS COIE LLP

2