In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 26-11705
_____

JENNIFER AUER JORDAN,
SHAMIRACLE J RANKIN,

*Plaintiffs-Appellees,*

*versus*

VICTORIA S. DARRISAW,

in their official capacities as members of
the Special Committee on Judicial
Election Campaign Intervention of the
Judicial Qualifications Commission,

JAMES L. COURSEY, JR.,

in their official capacities as members of
the Special Committee on Judicial
Election Campaign Intervention of the
Judicial Qualifications Commission,

WARREN SELBY,

in their official capacities as members of the
Special Committee on Judicial Election
Campaign Intervention of the Judicial Qualifications Commission,

*Defendants-Appellants.*

2                      Order of the Court                      26-11705

———————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:26-cv-00057-LAG

———————————————

Before NEWSOM, LUCK, and KIDD, Circuit Judges.

BY THE COURT:

Jennifer Jordan and ShaMiracle Rankin are running as candidates for Justice on the Supreme Court of Georgia. The election is this Tuesday, May 19, 2026. During the campaign, the Judicial Qualifications Commission—the state agency tasked with enforcing the Code of Judicial Conduct against sitting judges and judicial candidates—sent confidential notices to Jordan and Rankin that they were being investigated for violating the Code's endorsement clause, commitment clause, and false statement clause based on advertisements and statements they made or shared over social media.[1]

———————————————

[1] This is the endorsement clause: "[a] judge or a judicial candidate for public election to judicial office shall not . . . publicly endorse another candidate for public office . . . ." Ga. Code of Jud. Conduct R. 4.1(A)(2).

This is the commitment clause: "[j]udicial candidates . . . shall not make statements or promises that commit the candidate with respect to issues likely to come before the court that are inconsistent with the impartial performance of the adjudicative duties of judicial office . . . ." *Id.* R. 4.2(A)(2).

And this is the false statement clause: "[j]udicial candidates . . . shall not use or participate in the publication of a false statement of fact, or make any misleading statement concerning themselves or their candidacies, or concerning any opposing judicial candidate or candidacy, with knowledge of the

Here's how an investigation during a judicial election works under the Commission's rules. When the Commission receives a complaint raising campaign-related concerns during an election year, it reviews the complaint and determines if further investigation is necessary. Ga. Jud. Qual. Comm'n R. 17. If it is necessary, the Commission sends a confidential notice to the candidate explaining the alleged Code violations and requests a confidential written response. *Id*. R. 29(B). Then, the Commission reviews the response, and if it finds that speedy intervention is necessary, it may release a non-confidential public statement setting out the allegations and refer the matter for a full investigation. *Id*. R. 29(B)(4).

The Commission followed this process for Jordan and Rankin. The notices asked them to submit confidential written responses to the allegations for the Commission to consider as it determined what to do next. Instead, the candidates sued the Commission (through official capacity claims against three Commissioners). They sought a declaration that enforcement of the Code's endorsement, commitment, and false statement clauses violated their First and Fourteenth Amendment rights and an injunction barring the Commission from enforcing these clauses against them. The candidates moved for a temporary restraining order and a preliminary injunction prohibiting the Commission from continuing its investigation and from enforcing the Code against them while their lawsuit is pending.

---

statement's falsity or with reckless disregard for the statement's truth or falsity . . . ." *Id*. R. 4.2(A)(3).

The district court held a hearing on the candidates' motion. On Friday, May 15, 2026—four days before the election—it partly granted the motion, entering an injunction that bars the Commission from issuing a non-confidential public statement about the candidates' alleged Code violations.

The Commission has moved to stay the injunction pending appeal. "A court considering whether to issue a stay considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (citation modified). Importantly, under our precedent, "the movant may . . . have [its] motion granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (citation modified). For reasons we will explain, the equities here do weigh heavily in favor of a stay; accordingly, the lower "substantial case" standard applies.

## I.

Here, the Commission has made a "substantial case" that we have jurisdiction to review the injunction. "[T]he label placed upon [an] order is not necessarily dispositive of its appealability." *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309 1314 (11th Cir. 2004); *see also Abbott v. Perez*, 585 U.S. 579, 594 (2018) ("[T]he

label attached to an order is not dispositive."); *McDougald v. Jenson*, 786 F.2d 1465, 1472 (11th Cir. 1986) ("We agree that the label placed on an order such as the one entered in this case is not dispositive of its nature and appealability . . . ."). What matters, instead, is whether the order "carries many of the hallmarks of a preliminary injunction." *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025). So, "when a grant or denial of a [temporary restraining order] might have a serious, perhaps irreparable consequence, and can be effectively challenged only by immediate appeal, we may exercise appellate jurisdiction." *Ingraham v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (citation modified).

The district court's injunction has both hallmarks. Enjoining the Commission from enforcing the Code will irreparably harm the state. *See Trump v. CASA, Inc.*, 606 U.S. 831, 859–61 (2025); *Abbot*, 585 U.S. at 602–03. And because the election is Tuesday, the injunction barring enforcement of the Code against the candidates can be effectively challenged only by an immediate appeal during the election. As the candidates concede elsewhere, "in the judicial-campaign context there is no adequate post-election remedy . . . ."

The Supreme Court has warned against "shield[ing] . . . orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions." *Sampson v. Murray*, 415 U.S. 61, 87 (1974). By waiting ten days to hold a hearing on the candidates' motion, then another four to issue a summary, unreasoned order, and then granting an injunction that runs eight days—four beyond the scheduled election—there's

a substantial case that we're in impermissible "shielding" territory here.[2]

## II.

The Commission has also made a "substantial case" on the merits of the candidates' constitutional claims.  We have blessed a similar false statement clause as constitutionally sound.  *See Weaver v. Bonner*, 309 F.3d 1312, 1321 (11th Cir. 2002) ("We therefore adopt the actual malice standard . . . for regulations of candidate speech during judicial campaigns."); *see also Winter v. Wolnitzek*, 834 F.3d 681, 694–95 (6th Cir. 2016).  And while we haven't addressed similar challenges to similar endorsement and commitment clauses, our sister circuits have and they have found them not to violate the First and Fourteenth Amendments.  *See Wolfson v. Concannon*, 811 F.3d 1176, 1183–86 (9th Cir. 2016) (en banc); *Winter*, 834 F.3d at 691–93, 694–95; *Siefert v. Alexander*, 608 F.3d 974, 983–88 (7th Cir. 2010); *Bauer v. Shepard*, 620 F.3d 704, 713–17 (7th Cir. 2010).  *But see Fischer v. Thomas*, No. 25-5385, ___ F.4th ___, 2026 WL 1296146, at *8

---

[2] The dissent says that our jurisdiction is reserved for near life-or-death situations.  But neither we nor the Supreme Court have read our jurisdiction so narrowly.  And the Supreme Court recently held that it had appellate jurisdiction over a temporary restraining order that had nothing to do with near life-or-death because it carried the hallmarks of a preliminary injunction.  *See Dep't of Educ.*, 604 U.S. at 651 (reviewing TRO enjoining the government from terminating various education-related grants, requiring payment of past-due grant obligations, requiring government to pay obligations as they become due).  Just as the order here does.

(6th Cir. May 12, 2026) (affirming injunction of Kentucky's commitment clause).

Of course, we needn't (and don't) definitively resolve the merits of the candidates' First Amendment claims.  It is sufficient for present purposes that the Commission has demonstrated a "substantial case" that the clauses at issue will survive constitutional challenge.  The weight of analogous precedent convinces us that it has.[3]

### III.

The other stay factors weigh heavily in favor of granting the stay.  As we've already explained, enjoining the Commission from enforcing the Code will irreparably harm the state.  But a stay will not substantially injure the candidates.  *Cf. Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1570–71 (11th Cir. 1985) (agreeing that "[s]imply showing that the information would harm [a party's] reputation is not sufficient to overcome the strong common law presumption in favor of public access" to public records (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983))).  If anything, without a stay, the public will be harmed by not knowing about, and getting to evaluate for themselves, the credible allegations of misconduct.  *Cf. Newman v. Graddick*, 696

---

[3] The candidates assert that the Commission's application of the endorsement, commitment, and false statement clauses to their ads and statements "exceed the text."  But their assertion is just a plea that the Code does not cover what they did.  It is not an argument for why the clauses violate the First and Fourteenth Amendments.

F.2d 796, 801 (11th Cir. 1983) ("Informed public opinion is critical to effective self-governance." (citing *Grosjean v. Am. Press Co.*, 297 U.S. 233, 250 (1936))).  Judicial "codes of conduct serve to maintain the integrity of the judiciary and the rule of law," and their enforcement is "the principal safeguard against judicial campaign abuses that threaten to imperil public confidence in the fairness and integrity of the nation's elected judges." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009) (citation modified).

Having considered the stay factors, we **GRANT** the Commission's emergency motion and **STAY** the district court's injunction pending appeal.

**MOTION GRANTED.**[4]

---

[4] We also **GRANT** the Commission's motion to expedite consideration of its stay motion and the candidates' motion for leave to exceed the word limit.

26-11705                KIDD, J., Dissenting                1

KIDD, Circuit Judge, dissenting:

The majority finds that an exception typically reserved for life or death situations allows us to consider—and stay—the district court's temporary restraining order. I respectfully dissent. I conclude that we do not have jurisdiction to review this prototypical temporary restraining order and that, even if we did, the stay factors weigh in favor of denying the Commission's motion.

## I. We Do Not Have Jurisdiction Over This Temporary Restraining Order

The district court in this case issued a temporary restraining order ("TRO"). A TRO is not a final judgment, and we ordinarily lack jurisdiction to review TROs. *McDougald v. Jenson*, 786 F.2d 1465, 1472 (11th Cir. 1986). The exception to this rule is narrow: Only "when a grant or denial of a TRO might have a serious, perhaps irreparable, consequence, and can be effectually challenged only by immediate appeal, we may exercise appellate jurisdiction." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (citation modified).

What counts as a "serious, perhaps irreparable, consequence"? Life or death situations—or at least something close to that. *See id.* at 899–900 (permitting appeal of a TRO where a prisoner would be executed within 24 hours of the TRO's denial); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) (permitting appeal of the denial of a TRO seeking to place a terminally ill patient back on life support).

The Commission's desire to issue a public statement on the eve of an election is not close to a life or death situation that

2                    KIDD, J., Dissenting                    26-11705

warrants our review. The majority concludes otherwise for two reasons: (1) the Commission will supposedly suffer irreparable harm if the TRO is not immediately considered and stayed, and (2) the majority believes that the district court impermissibly masked a preliminary injunction as a TRO to shield its injunction from appellate review. Neither reason justifies an exception for this case.

First, the Commission fails to demonstrate irreparable harm if we do not stay the TRO. The Commission argues that it will be irreparably harmed by its inability to issue a public statement about its investigation before the upcoming election. But the Commission's alleged harm is far from the life or death situations that we have previously found to qualify for a jurisdictional exception. *See Ingram*, 50 F.3d at 899–900; *Schiavo*, 403 F.3d at 1225. And there are two sides to every coin. The candidates argue that they will be irreparably harmed if the Commission issues its statement on the eve of the election. The balance of harms is, at most, a wash and is therefore an insufficient basis for a jurisdictional exception.

Second, the district court's TRO is not a Trojan horse. The majority believes that the timeline of events at the district court demonstrates that the district court attempted to impermissibly shield its order from appellate review. *See Sampson v. Murray*, 415 U.S. 61, 87 (1974). My review of the record, which included a lengthy evidentiary hearing, reveals a district court grappling with complex statutory and constitutional issues and working diligently to provide the parties with a narrowly tailored order that maintains the status quo for a short period of time.

26-11705                    KIDD, J., Dissenting                    3

But more importantly, the *speed* at which a district court moves does not factor into our jurisdictional analysis. Rather, we examine the characteristics of the order itself to make that determination. *See Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1421–22 (11th Cir. 1995) ("[W]here the order has the effect of a preliminary injunction this court has jurisdiction to review the order and is not bound by the district court's designation of the order."). Here, the district court's order makes clear that it granted a classic TRO and not a preliminary injunction: the injunction is in effect for only 8 days—not an indefinite period of time—and the injunction simply maintains the status quo and imposes no other requirements upon the parties.

In sum, the district court issued a classic TRO and this case is not otherwise exceptional. I conclude that we lack jurisdiction to review the TRO.

## II. This Case Does Not Warrant a Stay

As to the merits, I disagree with the majority that the equitable factors at play weigh heavily in favor of granting the Commission's request to stay the TRO.

First, the Commission has not demonstrated that the district court likely abused its discretion in entering the TRO. "A candidate's speech during an election campaign occupies the core of the protection afforded by the First Amendment." *Weaver v. Bonner*, 309 F.3d 1312, 1319 (11th Cir. 2002) (citation modified). And a district court abuses its discretion only when it makes clearly erroneous factual findings, "applies the incorrect legal standard, or

4                          KIDD, J., Dissenting                    26-11705

. . . applies the law in an unreasonable or incorrect manner." *Wreal, LLC, v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). The Commission's brief arguments as to the candidates' likelihood of success on their constitutional claims have not convinced me that the district court committed any of these errors in deciding to grant the TRO. *Id.*

The remaining factors also do not warrant a stay. *See Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020). The TRO bars the Commission from issuing a public statement about the notice letters or the candidates' alleged violations for only *eight days*—until May 23, 2026. *See* Fed. R. Civ. P. 65(b)(2) (limiting the duration of a TRO to fourteen days). The TRO does not bar the Commission from continuing its preliminary investigation, proceeding with a referral for further investigation, or imposing sanctions against the candidates following the election.

Absent from the majority's order is any consideration of the harm that could befall the candidates. In my view, any harm to the Commission from this temporary delay in its ability to issue a public statement would be significantly less than the harm to the candidates from a public statement regarding their alleged code violations issued on the eve of the election.

Importantly, any harm to the Commission could be remedied by the imposition of post-election sanctions, including suspension and removal, if its investigation confirms that the candidates violated the code. The same is not true for the candidates, since the

26-11705                      KIDD, J., Dissenting                          5

bell of public misconduct allegations cannot be unrung. *See* Ga. Code § 15-1-21; Ga. Jud. Qual. Comm'n R. 29(B).

Finally, the public's interest in hearing the misconduct allegations is no less than its interest in hearing the candidates' platforms prior to Tuesday's election.

For these reasons, I disagree that the equitable factors weigh in the Commission's favor—much less that they weigh *heavily* in its favor, which is what we must find to grant a stay. *See Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

### III. Conclusion

Because I disagree both with the majority's determination that we have jurisdiction to review the TRO and that a stay is warranted in this appeal, I respectfully dissent.